FILED

2015 AUG 20  PM 3: 19

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
BY:_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

January 2015 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>ASHISH AGGARWAL,<br>SHAHRIYAR BOLANDIAN, and<br>KEVAN SADIGH,<br><br>　　　　Defendants. | CR No. CR 15 00465<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 371: Conspiracy to Commit Securities and Tender Offer Fraud; 15 U.S.C. §§ 78j(b), 78ff; 17 C.F.R. § 240.10b-5: Securities Fraud; 15 U.S.C. §§ 78n(e), 78ff; 17 C.F.R. § 240.14e-3(a): Tender Offer Fraud; 18 U.S.C. 1343: Wire Fraud; 18 U.S.C. § 1957: Transactional Money Laundering; 18 U.S.C. § 2: Aiding and Abetting and Causing an Act to be Done; 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 982(a)(1); 28 U.S.C. § 2461(c): Criminal Forfeiture] |

The Grand Jury charges:

COUNT ONE

[18 U.S.C. § 371]

[Defendants AGGARWAL, BOLANDIAN, and SADIGH]

A.    Introductory Allegations

    1.    At all times relevant to this Indictment:

        a.    Integrated Device Technology, Inc. ("IDTI"), was a semiconductor company based in San Jose, California, whose stock was publicly traded on the NASDAQ exchange under the symbol "IDTI."

        b.    PLX Technology, Inc. ("PLXT"), was an integrated circuit company based in Sunnyvale, California, whose stock was publicly traded on the NASDAQ exchange under the symbol "PLXT."

        c.    ExactTarget, Inc. ("ET"), was a mobile marketing company based in Indianapolis, Indiana, whose stock was publicly traded on the New York Stock exchange under the symbol "ET."

        d.    Salesforce.com, Inc. ("CRM"), was a cloud computing company based in San Francisco, California, whose stock was publicly traded on the New York Stock Exchange under the symbol "CRM."

    2.    At all times relevant to this Indictment, JP Morgan Securities, LLC ("JPMS") was an investment banking company that had an office in San Francisco, California.  The Technology, Media, and Telecom group of JPMS advised clients on prospective change of control transactions involving publicly traded companies.  From in or about March 2012 to in or about April 2012, JPMS's Technology, Media, and Telecom group served as a financial advisor to IDTI in a proposed exchange offer transaction to acquire PLXT (the "IDTI-PLXT Transaction").  From in or about May 2013 to June 2013, JPMS's Technology, Media, and Telecom group served as a financial advisor to

1   ET in a tender offer transaction whereby ET was purchased by CRM (the

2   "CRM-ET Transaction").   The IDTI-PLXT and CRM-ET Transactions are

3   referred to collectively as the "Subject Transactions."

4        3.   At all times relevant to this Indictment, defendant ASHISH

5   AGGARWAL ("AGGARWAL") was a resident of San Francisco, California.

6             a.   Beginning in or about June 2011, and continuing

7   through in or about June 2013, defendant AGGARWAL was employed in

8   JPMS's San Francisco office as an investment banking analyst in

9   JPMS's Technology, Media, and Telecom Group. From in or about August

10  2011 to in or about June 2013, defendant AGGARWAL was licensed as a

11  registered representative under applicable securities regulations.

12            b.   As a JPMS employee, defendant AGGARWAL was subject to

13  JPMS policies, which restricted defendant AGGARWAL's ability to

14  engage in securities transactions.   These policies included that

15  defendant AGGARWAL was required to (a) identify and disclose to JPMS

16  all employee-associated brokerage accounts; and (b) obtain pre-

17  clearance from JPMS of proposed securities transactions.   JPMS

18  policies also prohibited certain trading practices, including day

19  trading, short selling, futures and options trading, and purchasing

20  U.S. registered initial public offerings.

21            c.   Defendant AGGARWAL did not work on the deal teams for

22  the Subject Transactions.   However, by virtue of defendant AGGARWAL's

23  professional and social relationships with JPMS colleagues in the San

24  Francisco office who were members of the deal teams for the Subject

25  Transactions, defendant AGGARWAL became aware of material non-public

26  information regarding the nature and timing of the Subject

27  Transactions (the "Inside Information").   Defendant AGGARWAL had a

28

1  duty not to disclose the Inside Information that he obtained through
2  his employment at JPMS to third parties not involved in the Subject
3  Transactions, or to use such information for his personal benefit or
4  the benefit of others.

5       4.   At all times relevant to this Indictment, defendant
6  SHAHRIYAR BOLANDIAN ("BOLANDIAN") was a personal friend of defendant
7  AGGARWAL and a resident of Los Angeles, California.  Defendants
8  BOLANDIAN and AGGARWAL attended college together and graduated in
9  2010.

10      5.   At all times relevant to this Indictment, defendant KEVAN
11  SADIGH ("SADIGH") was a resident of Los Angeles, California.  From in
12  or about December 2011 to in or about October 2013, defendant SADIGH
13  was an owner of an apparel company called Greek Life Threads.
14  Defendants SADIGH and BOLANDIAN were childhood friends, and defendant
15  BOLANDIAN worked for Greek Life Threads in or about May 2013.
16  Defendant SADIGH was a social acquaintance of defendant AGGARWAL.

17      6.   Beginning no later than in or around August 2011, in order
18  to circumvent JPMS trading policies, defendant AGGARWAL executed
19  securities transactions using brokerage accounts set up by defendant
20  BOLANDIAN in the name of defendant BOLANDIAN.  In connection with
21  these brokerage accounts, defendants AGGARWAL and BOLANDIAN
22  maintained an informal tally of gains and losses that were owed to or
23  by defendant AGGARWAL.

24      7.   Beginning no later than in or around September 2012 and
25  continuing through in or around October 2012, defendant BOLANDIAN
26  borrowed a combined amount of approximately $230,000 from family and
27  friends.  Defendants AGGARWAL and BOLANDIAN jointly used the borrowed

28

1  money to trade through defendant BOLANDIAN's brokerage accounts,

2  pursuant to an arrangement under which defendants AGGARWAL and

3  BOLANDIAN shared liability for losses resulting from the trades.

4  After borrowing the money, and before public announcement of the CRM-

5  ET Transaction, defendants BOLANDIAN and AGGARWAL jointly used the

6  borrowed money to trade and lost almost all of the borrowed money

7  through a number of unsuccessful securities transactions.  As of in

8  or around March 2013, defendant AGGARWAL was liable for approximately

9  $100,000 in losses from unsuccessful securities transactions that

10 were executed in defendant BOLANDIAN's brokerage accounts.

11 B.   The Objects of the Conspiracy

12       8.   From in or about April 2012 to in or about February 2015,

13 within the Central District of California and elsewhere, defendants

14 AGGARWAL, BOLANDIAN, and SADIGH, together with others known and

15 unknown to the Grand Jury, knowingly combined, conspired, and agreed

16 to commit the following offenses against the United States:

17            a.   Insider trading, a form of securities fraud, by

18 directly and indirectly, by the use of the means and

19 instrumentalities of interstate commerce, and of the mails, and of

20 facilities of national securities exchanges, in connection with the

21 purchase and sale of securities, (a) employing devices, schemes, and

22 artifices to defraud members of the investing public; (b) making

23 untrue statements of material facts and omitting to state material

24 facts necessary in order to make the statements made, in the light of

25 the circumstances under which they were made, not misleading; and

26 (c) engaging in acts, practices, and a course of business which

27 operated and would operate as a fraud and deceit upon persons, by

28

1  engaging in purchases and sales of securities of issuers on the basis
2  of material non-public information about those securities and
3  issuers, in breach of a duty of trust and confidence that was owed
4  directly, indirectly, and derivatively, to the issuers of those
5  securities, the shareholders of those issuers, and to other persons
6  and entities who were the source of the material non-public
7  information, in violation of Title 15, United States Code, Sections
8  78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section
9  240.10b-5; and,

10        b.    Tender offer fraud, by engaging in fraudulent,
11  deceptive, and manipulative acts and practices, in connection with
12  tender offers, by, after the offering persons had taken substantial
13  steps to commence the tender offers, while in possession of material
14  non-public information relating to such tender offers, which
15  information they knew was non-public and had been acquired directly
16  and indirectly from the offering person, from the issuer of the
17  securities sought and to be sought by such tender offers, and any
18  officer, director, partner, and employee and any other person acting
19  on behalf of the offering persons and such issuers, purchasing and
20  selling, and causing to be purchased and sold such securities, and
21  options and rights to obtain and to dispose of such securities,
22  without first publicly disclosing such information and its source, in
23  violation of Title 15, United States Code, Section 78n(e) and 78ff,
24  and Title 17, Code of Federal Regulations, Section 240.14e-3(a).

25  C.   The Purposes of the Conspiracy

26        9.    The purposes of the conspiracy were for defendants
27  AGGARWAL, BOLANDIAN, SADIGH, together with others known and unknown
28

1  to the Grand Jury, to (1) profit from securities transactions
2  executed on the basis of Inside Information that defendant AGGARWAL
3  obtained through his employment at JPMS, which Inside Information
4  related to change of control transactions involving JPMS clients,
5  including, but not limited to, the Subject Transactions; and (2)
6  conceal that these securities transactions were deliberately executed
7  on the basis of Inside Information obtained and transmitted by
8  defendant AGGARWAL.

9  D.   The Manner and Means of the Conspiracy

10      10.   The objects of the conspiracy were carried out, and to be
11  carried out, in substance, in the following manner and means:

12      a.    While employed at JPMS, defendant AGGARWAL obtained
13  Inside Information from colleagues at JPMS who worked directly on the
14  deal teams for the Subject Transactions.  Defendant AGGARWAL obtained
15  such Inside Information through email communications from, and work-
16  related and social interactions with, JPMS employees who were members
17  of the deal teams for the Subject Transactions.

18      b.    Defendant AGGARWAL, without the permission of JPMS and
19  its clients, and in violation of a duty of trust and confidence that
20  defendant AGGARWAL owed to JPMS and its clients, disclosed to
21  defendant BOLANDIAN, by telephone, text message, and in-person
22  communications, Inside Information about the identities of the
23  parties involved and the timing of the Subject Transactions in order
24  to enable defendant BOLANDIAN to reap profits in his trading accounts
25  by using this material, non-public information to engage in
26  transactions involving the securities, and options and rights to

27
28

1  obtain and dispose of the securities, of the publicly-traded
2  companies involved in the Subject Transactions.
3          c.    Defendant BOLANDIAN, in turn, shared with defendant
4  SADIGH, by telephone, text message, and in-person communications, the
5  Inside Information regarding the Subject Transactions that defendant
6  BOLANDIAN received from defendant AGGARWAL in order to enable
7  defendant SADIGH to reap profits in his trading accounts through the
8  use of this material, non-public information to engage in
9  transactions involving the securities, and options and rights to
10 obtain and dispose of the securities, of the publicly-traded
11 companies involved in the Subject Transactions.
12         d.    Defendants BOLANDIAN and SADIGH, knowing that the
13 Inside Information was disclosed to them in violation of a duty of
14 trust and confidence, used the Inside Information to trade in the
15 securities, and options and rights to obtain and dispose of the
16 securities, of the publicly traded companies involved in the Subject
17 Transactions, both on behalf of themselves, and, in the case of
18 defendant BOLANDIAN, on behalf of his father and sister, prior to the
19 public announcement of the Inside Information.
20         e.    Soon after public announcement of the Inside
21 Information, defendants BOLANDIAN and SADIGH sold the securities, and
22 the options and rights to obtain and dispose of securities, that they
23 had earlier purchased on the basis of the Inside Information provided
24 by defendant AGGARWAL, and in doing so netted substantial profits
25 from their insider trading.  Defendant BOLANDIAN netted in excess of
26 $400,000 in illicit profits from purchases that defendant BOLANDIAN
27 had made on his own behalf and on behalf of his father and sister.
28

1  Defendant SADIGH netted in excess of $200,000 in illicit profits from

2  purchases that defendant SADIGH had made on his own behalf.

3        f.    After obtaining the illicit profits from the insider

4  trading relating to the Subject Transactions, defendant BOLANDIAN

5  shared the profits with defendant AGGARWAL, by (a) applying a portion

6  of the profits to defendant AGGARWAL's running tally with defendant

7  BOLANDIAN, (b) paying back debts that defendants BOLANDIAN and

8  AGGARWAL incurred that were owed to individuals who previously lent

9  money to defendant BOLANDIAN, and (c) paying for an expensive meal in

10 cash for defendants BOLANDIAN and AGGARWAL at a restaurant in San

11 Francisco.

12       g.    Defendant SADIGH used the illicit profits from his

13 insider trading relating to the Subject Transactions in part to cover

14 previous trading losses.

15       h.    In an effort to prevent their insider trading from

16 being detected, defendants AGGARWAL, BOLANDIAN, and SADIGH took steps

17 to conceal the conspiracy, including but not limited to: (a) sending

18 emails to each other, after having completed their trades based on

19 Inside Information, that contained false statements suggesting that

20 their trades were based on research or luck, not Inside Information;

21 and (b) in the case of defendant AGGARWAL, falsely asserting to a

22 friend that his disclosure of Inside Information to defendant

23 BOLANDIAN was inadvertent.

24 E.   Overt Acts

25       11.   In furtherance of the conspiracy and to effect the objects

26 of the conspiracy, defendants AGGARWAL, BOLANDIAN, and SADIGH,

27 together with other co-conspirators known and unknown to the Grand

28

1   Jury, committed the following overt acts, among others, in the

2   Central District of California and elsewhere:

3            a.   On or about April 16, 2012, one day after defendant

4   AGGARWAL received an email from a JPMS colleague that mentioned a

5   draft press release for the IDTI-PLXT Transaction, defendants

6   BOLANDIAN and SADIGH each purchased 30 PLXT call options, with a

7   strike price of $5 and an expiration date of September 2012.

8            b.   On or about April 17, 2012, at around the same time

9   that defendant BOLANDIAN was communicating via text message with

10   defendant AGGARWAL, defendants BOLANDIAN and SADIGH purchased 25 and

11   50 PLXT call options, respectively, with a strike price of $5 and an

12   expiration date of September 2012.

13            c.   On or about April 17, 2012, defendant SADIGH purchased

14   1000 shares of PLXT common stock.

15            d.   On or about April 19, 2012, soon after defendants

16   AGGARWAL, BOLANDIAN, and SADIGH had exchanged text messages,

17   defendants BOLANDIAN and SADIGH each purchased 1000 shares of PLXT

18   common stock, defendant SADIGH purchased 20 PLXT call options with a

19   strike price of $5 and an expiration date of September 2012, and

20   defendant BOLANDIAN purchased 145 PLXT call options with a strike

21   price of $5 and an expiration date of September 2012.

22            e.   On or about May 8, 2013, soon after defendants

23   AGGARWAL, BOLANDIAN and SADIGH had exchanged text messages, defendant

24   SADIGH purchased a net amount of 2300 shares of ET common stock.

25            f.   On or about May 9, 2013, defendant BOLANDIAN purchased

26   77 ET call options with a strike price of $22.50 and an expiration

27   date of September 2013.

28

1    g. On or about May 9, 2013, defendant BOLANDIAN caused to

2 be purchased in a brokerage account in the name of his father 50 ET

3 call options with a strike price of $22.50 and an expiration date of

4 May 2013 and 30 ET call options with a strike price of $22.50 and an

5 expiration date of September 2013.

6    h. On or about May 9, 2013, defendant BOLANDIAN caused to

7 be purchased in a brokerage account in the name of his sister 4 ET

8 call options with a strike price of $22.50 and an expiration date of

9 September 2013.

10    i. On or about May 23, 2013, soon after a bidder for ET

11 had made an offer, and soon after defendants AGGARWAL, BOLANDIAN, and

12 SADIGH had exchanged text messages, defendant BOLANDIAN opened an

13 offshore brokerage account (the "Offshore Account").

14    j. On or about May 28, 2013, approximately three days

15 after ET entered into exclusive negotiations with CRM, defendants

16 BOLANDIAN and SADIGH purchased 15 and 10 ET call options,

17 respectively, with a strike price of $22.50 and an expiration date of

18 July 2013.

19    k. On or about May 29, 2013, defendants BOLANDIAN and

20 SADIGH purchased 9 and 50 ET call options, respectively, with a

21 strike price of $22.50 and an expiration date of July 2013.

22    l. On or about May 29, 2013, defendant SADIGH purchased

23 10 ET call options with a strike price of $22.50 and an expiration

24 date of June 2013.

25    m. On or about May 30, 2013, defendant SADIGH purchased

26 20 ET call options with a strike price of $22.50 and an expiration

27 date of July 2013.

28

1       n.    On or about May 30, 2013, defendant BOLANDIAN funded
2   the Offshore Account with approximately $15,000 using his credit
3   card.

4       o.    On or about May 31, 2013, one day after defendant
5   AGGAWAL received an email from a JPMS colleague that mentioned a
6   draft fairness opinion for the CRM-ET Transaction, defendant
7   BOLANDIAN, in his Offshore Account, purchased 100 ET call options
8   with a strike price of $22.50 and an expiration date of June 2013.

9       p.    On or about June 3, 2013, after having exchanged
10  multiple phone calls with defendant AGGARWAL during the preceding two
11  days, defendant BOLANDIAN sold 70 ET call options with a September
12  expiration date, and purchased 155 ET call options with a strike
13  price of $22.50 and an expiration date of June 2013.

14      q.    On or about June 3, 2013, defendant BOLANDIAN, logging
15  into the brokerage accounts of his father and sister from the same IP
16  address, sold ET call options with an expiration date of September,
17  and purchased a total of 74 ET call options with a strike price of
18  $22.50 and an expiration date of June 2013.

19      r.    On or about June 3, 2013, defendant SADIGH purchased
20  20 ET call options with a strike price of $22.50 and an expiration
21  date of July 2013.

22      s.    On or about June 4, 2013, shortly after the
23  acquisition of ET by CRM was publicly announced, defendants BOLANDIAN
24  and SADIGH spoke to each other on the telephone several times, while
25  at around the same time selling off their positions in ET for a
26  substantial profit.

27

28

1           t.    On or about June 4, 2013, defendant BOLANDIAN caused

2    the sale in his sister's brokerage account of 9 ET call options with

3    a strike price of $22.50 and an expiration date of June 2013.

4           u.    On or about June 4, 2013, defendant BOLANDIAN caused

5    the sale in his father's brokerage account of 89 ET call options with

6    a strike price of $22.50 and an expiration date of June 2013.

7           v.    On or about June 4, 2013, defendant BOLANDIAN sold in

8    his Offshore Account 100 ET call options with a strike price of

9    $22.50 and an expiration date of June 2013.

10          w.    On or about June 4, 2013, through their sales of ET

11   securities in their individual accounts, defendants BOLANDIAN and

12   SADIGH directly realized profits of approximately $317,000 and

13   $178,000, respectively.

14          x.    On or about June 4, 2013, defendant BOLANDIAN

15   indirectly realized profits of approximately $91,000 and $9,100,

16   respectively, by using his father's and sister's brokerage accounts

17   to sell ET securities.

18          y.    On or about June 7, 2013, defendant BOLANDIAN

19   instructed the brokerage firm at which he had opened the Offshore

20   Account to refund $15,000 to his credit card to pay off the borrowed

21   amount that defendant BOLANDIAN used to fund the Offshore Account.

22          z.    On or about June 14, 2013, defendants BOLANDIAN and

23   AGGARWAL celebrated their profit-taking on the CRM-ET Transaction by

24   dining at a restaurant in San Francisco, where they paid $644 cash

25   for the meal.

26          aa.   On or about June 20, 2013, defendants AGGARWAL,

27   BOLANDIAN, and SADIGH sent emails to each other setting forth an

28

1   innocent, albeit false, cover story for their purchases and sales of

2   ET securities.

3          bb.   On or about September 14, 2013, while admitting to a

4   friend, L.R., that he had disclosed Inside Information to defendant

5   BOLANDIAN about the CRM-ET Transaction on which defendant BOLANDIAN

6   traded for their mutual benefit, defendant AGGARWAL falsely claimed

7   that his disclosure of such Inside Information to defendant BOLANDIAN

8   was inadvertent.

9          cc.   On or about February 10, 2015, defendant SADIGH

10   falsely stated, when asked why he invested in ET in May 2013, that he

11   invested in ET because he had used ET's products at his business,

12   Greek Life Threads.

13          dd.   On or about February 10, 2015, defendant BOLANDIAN

14   falsely stated that the rationale for his purchase of ET securities

15   in May and June 2013 was that one of his friends, defendant SADIGH,

16   had used ET's products at his business, Greek Life Threads.

17          ee.   On or about February 10, 2015, defendant AGGARWAL

18   falsely stated, when asked about his financial dealings with

19   defendant BOLANDIAN, that he engaged in no financial transactions

20   with defendant BOLANDIAN other than making or receiving payments

21   through the digital Venmo system.

22

23

24

25

26

27

28

COUNTS TWO THROUGH FOURTEEN

[15 U.S.C. §§ 78j(b) and 78ff; 17 C.F.R. § 240.10b-5;
18 U.S.C. § 2]

[Defendants AGGARWAL, BOLANDIAN, and SADIGH]

12.   The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 7 and 9 through 11 of this Indictment as though fully set forth herein.

13.   On or about the dates set forth below, in Los Angeles County, within the Central District of California and elsewhere, defendants AGGARWAL, BOLANDIAN, and SADIGH, directly and indirectly, by the use of the means and instrumentalities of interstate commerce, and of the mails, and of the facilities of national securities exchanges, in connection with the purchase and sale of securities, (a) employed devices, schemes, and artifices to defraud members of the investing public; (b) made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices, and a course of business which operated and would operate as a fraud and deceit upon persons, in that defendants BOLANDIAN and SADIGH executed and caused to be executed the securities transactions listed below on the basis of material non-public information relating to those transactions that they knew was provided by defendant AGGARWAL in breach of a duty of trust and confidence that was owed directly, indirectly, and derivatively, to the issuers of those securities, the shareholders of those issuers, and to other persons and entities who were the source of the material non-public information, in violation

15

of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5:

| COUNT | DATE | SECURITIES TRANSACTION |
|-------|------|------------------------|
| TWO | 4/17/12 | BOLANDIAN purchase of 25 PLXT call options, strike price $5, expiration date September 2012 |
| THREE | 4/17/12 | SADIGH purchase of 50 PLXT call options, strike price $5, expiration date September 2012 |
| FOUR | 4/17/12 | SADIGH purchase of 1000 shares of PLXT common stock |
| FIVE | 4/19/12 | BOLANDIAN purchase of 1000 shares of PLXT common stock |
| SIX | 4/19/12 | SADIGH purchase of 1000 shares of PLXT common stock |
| SEVEN | 5/28/13 | BOLANDIAN purchase of 15 ET call options, strike price $22.50, expiration date July 2013 |
| EIGHT | 5/29/13 | BOLANDIAN purchase of 9 ET call options, strike price $22.50, expiration date July 2013 |
| NINE | 5/29/13 | SADIGH purchase of 50 ET call options, strike price $22.50, expiration date July 2013 |
| TEN | 5/29/13 | SADIGH purchase of 10 ET call options, strike price $22.50, expiration date June 2013 |
| ELEVEN | 5/30/13 | SADIGH purchase of 20 ET call options, strike price $22.50, expiration date July 2013 |
| TWELVE | 5/31/13 | BOLANDIAN purchase of 100 ET call options, strike price $22.50, expiration date June 2013 |
| THIRTEEN | 6/3/13 | BOLANDIAN purchase of 155 ET call options, strike price $22.50, expiration date June 2013 |
| FOURTEEN | 6/3/13 | SADIGH purchase of 20 ET call options, strike price $22.50, expiration date July 2013 |

COUNTS FIFTEEN THROUGH TWENTY-SEVEN

[15 U.S.C. §§ 78n(e) and 78ff; 17 C.F.R. § 240.14e-3(a);
18 U.S.C. § 2]

[Defendants AGGARWAL, BOLANDIAN, and SADIGH]

14.   The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 7 and 9 through 11 of this Indictment as though fully set forth herein.

15.   On or about the dates set forth below, in Los Angeles County, within the Central District of California and elsewhere, defendants AGGARWAL, BOLANDIAN, and SADIGH, knowingly, unlawfully, and willfully engaged in fraudulent, deceptive, and manipulative acts and practices in connection with tender offers, in that, after IDTI and CRM had taken substantial steps to commence tender offers for PLXT and ET common stock, defendants BOLANDIAN and SADIGH, while in possession of material information relating to such tender offers provided by defendant AGGARWAL, which information defendants BOLANDIAN and SADIGH knew was nonpublic and had been acquired directly and indirectly from the offering person, and from an officer, director, and employee and other person acting on behalf of the offering person and of the issuer of such securities, made and caused to be made the following purchases of PLXT and ET securities without first publicly disclosing such information and its source, and without such information and its source having been publicly disclosed within a reasonable time prior to such purchase and sale, as specified in each count below:

| COUNT | DATE | SECURITIES TRANSACTION |
|-------|------|------------------------|
| FIFTEEN | 4/17/12 | BOLANDIAN purchase of 25 PLXT call options, strike price $5, expiration date September 2012 |
| SIXTEEN | 4/17/12 | SADIGH purchase of 50 PLXT call options, strike price $5, expiration date September 2012 |
| SEVENTEEN | 4/17/12 | SADIGH purchase of 1000 shares of PLXT common stock |
| EIGHTEEN | 4/19/12 | BOLANDIAN purchase of 1000 shares of PLXT common stock |
| NINETEEN | 4/19/12 | SADIGH purchase of 1000 shares of PLXT common stock |
| TWENTY | 5/28/13 | BOLANDIAN purchase of 15 ET call options, strike price $22.50, expiration date July 2013 |
| TWENTY-ONE | 5/29/13 | BOLANDIAN purchase of 9 ET call options, strike price $22.50, expiration date July 2013 |
| TWENTY-TWO | 5/29/13 | SADIGH purchase of 50 ET call options, strike price $22.50, expiration date July 2013 |
| TWENTY-THREE | 5/29/13 | SADIGH purchase of 10 ET call options, strike price $22.50, expiration date June 2013 |
| TWENTY-FOUR | 5/30/13 | SADIGH purchase of 20 ET call options, strike price $22.50, expiration date July 2013 |
| TWENTY-FIVE | 5/31/13 | BOLANDIAN purchase of 100 ET call options, strike price $22.50, expiration date July 2013 |
| TWENTY-SIX | 6/3/13 | BOLANDIAN purchase of 155 ET call options, strike price $22.50, expiration date June 2013 |
| TWENTY-SEVEN | 6/3/13 | SADIGH purchase of 20 ET call options, strike price $22.50, expiration date July 2013 |

COUNTS TWENTY-EIGHT THROUGH THIRTY

[18 U.S.C. §§ 1343, 2]

[Defendants AGGARWAL, BOLANDIAN, and SADIGH]

16.   The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 7 and 9 through 11 of this Indictment as though fully set forth herein.

17.   Beginning in or about April 2012, and continuing to in or about February 2015, in Los Angeles County, within the Central District of California, and elsewhere, defendants AGGARWAL, BOLANDIAN, and SADIGH, knowingly and with intent to defraud, devised, participated in, and executed a scheme to defraud JPMS and its clients, and the victim counterparties to the purchases and attempted purchases by defendants BOLANDIAN and SADIGH of shares, and call options contracts for shares, of PLXT and ET common stock, as to material matters, and to obtain money and property from such victims by means of false and fraudulent pretenses, representations, and promises, and the concealment of material facts.

18.   The fraudulent scheme operated, in substance, in the manner described in paragraphs 1 through 7 and 9 through 11 of this Indictment.

19.   On or about the dates set forth below, within the Central District of California and elsewhere, defendants AGGARWAL, BOLANDIAN, and SADIGH, for the purpose of executing the scheme to defraud, transmitted and caused to be transmitted the following items by means of wire and radio communications in interstate commerce:

| COUNT | DATE | USE OF WIRE |
|-------|------|-------------|
| TWENTY-EIGHT | 4/19/12 | Electronic order to purchase 1000 shares of PLXT common stock executed by defendant BOLANDIAN from TDA account number xxx-xx2153. |
| TWENTY-NINE | 5/31/13 | Transfer of $13,500 by defendant BOLANDIAN from American Express account number xxxxxxxxxxx1002 to the Offshore Account. |
| THIRTY | 6/4/13 | Electronic order to sell 13 ET call options with a strike price of $22.50 and an expiration date of July 2013, executed by defendant BOLANDIAN from TDA account number xxx-xx2153. |

COUNT THIRTY-ONE

[18 U.S.C. § 1957]

[Defendant BOLANDIAN]

20.   The Grand Jury hereby incorporates by reference and re-alleges paragraphs 1 through 7 and 9 through 11 of this Indictment as though fully set forth herein.

21.   On or about June 12, 2013, in Los Angeles County, within the Central District of California, and elsewhere, defendant BOLANDIAN knowingly engaged in a monetary transaction, affecting interstate commerce, in criminally derived property of a value greater than $10,000, by withdrawing $26,000 cash from Bank of America account number xxxxxx3015, such property having been derived from a specified unlawful activity, namely, wire fraud, in violation of Title 18, United States Code, Section 1343.

1          FORFEITURE ALLEGATION

2      [18 U.S.C. §§ 981(a)(1)(C) and 982(a)(1) and 28 U.S.C.

3                  § 2461(c)]

4      22.   Pursuant to Title 18, United States Code, Sections

5   981(a)(1)(C) and 982(a)(1) and Title 28, United States Code, Section

6   2461(c), each of the defendants convicted of any of the offenses set

7   forth in Counts One through Thirty-One of this Indictment shall

8   forfeit to the United States the following property:

9          a.   All right, title and interest in any and all property,

10  real or personal, constituting, or derived from, any proceeds

11  obtained, directly or indirectly, as a result of any offense set

12  forth in any of Counts One through Thirty-One of this Indictment,

13  including but not limited to assets seized on or about February 9,

14  2015 at Chicago, Illinois, specifically $36,684.26 seized from

15  Defendant SADIGH'S Option House account #XXXX0899; and

16         b.   With respect to Count Thirty-One, any property, real

17  or personal, involved in such offense, or any property traceable to

18  such property; and

19         c.   A sum of money equal to the total value of the

20  property described in subparagraphs a and b above.  For each of

21  Counts One through Thirty-One for which more than one defendant is

22  found guilty, each such defendant shall be jointly and severally

23  liable for the entire amount forfeited pursuant to that Count.

24     23.   Pursuant to Title 21, United States Code, Section 853(p),

25  as incorporated by Title 18, United States Code, Section 982(b) and

26  Title 28, United States Code, Section 2461(c), each defendant shall

27  forfeit substitute property, up to the total value of the property

28

                          22

described in the preceding paragraph if, as the result of any act or omission of a defendant, the property described in the preceding paragraph, or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in

/   /

/   /

1   value; or (e) has been commingled with other property that cannot be
2   divided without difficulty.

3
                                    A TRUE BILL
4
5                                       /s/
                                    _____
6                                   Foreperson

7
    EILEEN M. DECKER
8   United States Attorney

9
10  LAWRENCE S. MIDDLETON
    Assistant United States Attorney
11  Chief, Criminal Division

12

13  GEORGE S. CARDONA
    Assistant United States Attorney
14  Chief, Major Frauds Section

15  ANDREW WEISSMANN
    Chief, Fraud Section
16  U.S. Department of Justice

17  BENJAMIN D. SINGER
    Deputy Chief, Fraud Section
18  U.S. Department of Justice

19  THOMAS B.W. HALL
    Trial Attorney, Fraud Section
20  U.S. Department of Justice

21  ALEXANDER F. PORTER
    Trial Attorney, Fraud Section
22  U.S. Department of Justice

23  PAUL STERN
    Assistant United States Attorney
24  Senior Litigation Counsel, Major
    Frauds Section
25

26

27

28